IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER T.,

       Plaintiff,
  v.                                 Civil Action No.
                                       3:18-CV-975 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF STEVEN DOLSON    STEVEN DOLSON, ESQ.
126 North Salina Street
Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH            ANDREEA LECHLEITNER, ESQ.
United States Attorney                Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on May 9, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:     May 17, 2019
           Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
CHRISTOPHER T.,

                    Plaintiff,

vs.                                       3:18-CV-975

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------x

                  DECISION - May 9, 2019

     James Hanley Federal Building, Syracuse, New York

               HONORABLE DAVID E. PEEBLES

         United States Magistrate-Judge, Presiding



                A P P E A R A N C E S (by telephone)

For Plaintiff:        STEVEN R. DOLSON, ESQ.
                      Attorney at Law
                      126 North Salina Street
                      Syracuse, New York 13202

For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of Regional General Counsel
                      26 Federal Plaza
                      New York, New York 10278
                        BY:  ANDREEA L. LECHLEITNER, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1  THE COURT: I have before me an application for
2  judicial review of an adverse determination by the Acting
3  Commissioner of Social Security pursuant to 42, United States
4  Code, Sections 405(g) and 1383(c)(3). The background is as
5  follows.
6  Plaintiff was born in April of 1972 and is
7  currently 47 years of age. He was 42 years old at the
8  alleged onset date of July 26, 2014. Plaintiff is divorced.
9  He lives alone in an apartment in Greene, New York, although
10 he has two children who at the time of the hearing in this
11 matter were aged 12 and 14 and he has 50 percent custody of
12 those children.
13 Plaintiff has a high school degree, as well as an
14 Associate's Degree and a Bachelor's Degree. While in school
15 he was in regular classes. Plaintiff is right-hand dominant
16 but does use his left hand more currently due to the stroke
17 and its effect on his right extremities.
18 Plaintiff drives. He is 5-foot 6-inches in height
19 and weighs 157 pounds. Plaintiff has worked as an accountant
20 over the years for various employers since 2000, including
21 International Paper, Amphenol Aerospace, and The Raymond
22 Corporation.
23 Plaintiff had a stroke in July of 2014. He was
24 hospitalized until he was discharged on July 31, 2014. He
25 then underwent rehabilitation in August of 2014 and was

discharged on August 22, 2014. Plaintiff has several health care providers, including Dr. Martin Masarech, who he sees every six months; Dr. Yahia Lodi, a neurologist, who he has seen up until August 17, 2016, he underwent MRI testing every six months. He has also seen Dr. Jin Kim for physical therapy and rehabilitation from July 2014 to April 2015.

The plaintiff was observed by health care providers to have a hemiplegic gait pattern. Also a slight foot drop was observed by Dr. Jenouri, at page 432. Plaintiff does not use a cane or any other assistive device to ambulate, however. There is no indication of any mental health treatment or hospitalization of the plaintiff. Plaintiff smokes one half pack of cigarettes per day.

In terms of daily activities of daily living, those include the ability to dress and take care of his personal hygiene; he cleans; he can cook simple meals; he does laundry; watches television; he fishes; he shops; does some socialization; and takes care of his children. The activities of daily living are described at pages 56, 432 and 536 of the Administrative Transcript.

Procedurally, plaintiff applied for Title II and Title XVI benefits protectively on October 9, 2014. In his application he alleged that he was limited and unable to perform work functions based upon hypertension, a brain aneurysm, two strokes, right side paralysis, speech

1  impediment, right hand impediment, right arm impediment, left
2  middle cerebral artery stroke, right upper extremity pain,
3  right lower extremity weakness, forgetfulness, short term
4  memory deficits and hypertension.  That's at page 219.
5      The original onset date was alleged to be March 31,
6  2014.  The hearing was conducted on March 9, 2017 by
7  Administrative Law Judge John Ramos.  At that time the onset
8  date was amended to July 26, 2014, the date on which the
9  plaintiff sustained his stroke.  On August 10, 2017 ALJ Ramos
10 issued an unfavorable decision.  The decision became a final
11 determination of the Agency on July 18, 2018 when the Social
12 Security Administration Appeals Council denied plaintiff's
13 request for review.
14     In his decision ALJ Ramos applied the familiar
15 five-step sequential test for determining disability.
16     After determining first that plaintiff was insured
17 through December 31, 2019, he concluded at step one that
18 plaintiff had not engaged in substantial gainful activity
19 since his amended alleged onset date of July 26, 2014.
20     At step two ALJ Ramos concluded that plaintiff
21 suffers from severe impairments that impose at least minimal
22 limitations on the ability to perform work-related functions,
23 including the history of stroke with subsequent gait, speech,
24 right-sided motor and neurocognitive impairments.
25     At step three the Administrative Law Judge

1  concluded that plaintiff's impairments did not meet or
2  medically equal any of the listed presumptively disabling
3  impairments, including specifically consideration of listings
4  11.04, 12.02, and 12.05.
5      The Administrative Law Judge next surveyed the
6  available evidence and concluded that, notwithstanding these
7  impairments, plaintiff retains the residual functional
8  capacity, or RFC, to perform sedentary work, and went on to
9  state the following additional limitations.  He can
10 understand oral and simple written instructions and
11 communicate simple information; he retains the ability to
12 understand and follow simple instructions and directions,
13 perform simple tasks with supervision and independently, and
14 maintain attention/concentration for simple tasks; he can
15 regularly attend to a routine and maintain a schedule; he can
16 relate to and interact with others to the extent necessary to
17 carry out simple tasks; and he can handle reasonable levels
18 of simple work-related stress, in that he can make decisions
19 directly related to the performance of simple work and handle
20 usual workplace changes and interactions associated with
21 simple work.
22     Applying that RFC, ALJ Ramos concluded at step four
23 that plaintiff is incapable of performing his past relevant
24 work as an accountant.
25     At step five ALJ Ramos concluded, based upon the

Medical-Vocational Guidelines in the regulations, or the grids, that if plaintiff was able to perform a full range of sedentary work, Rule 201.28 of the grids would direct a no disability determination. He went on to consider the additional mental limitations of the RFC and concluded that, notwithstanding those limitations, plaintiff can still meet the basic mental demands of competitive unskilled work, and cited specifically Social Security Rulings 85-15 and 83-14. He, therefore, concluded that the job base on which the grids are predicated was not sufficiently eroded to require testimony of a vocational expert, and concluded that the grid Rules 201.28 and 201.21 directed a finding of no disability.

As you know, my role is limited. I must determine whether the Commissioner's findings resulted from the application of proper legal principles and were supported by substantial evidence. The burden, of course, of establishing disability and limitations resulting from impairments through step four rests with the plaintiff based on *Poupore versus Astrue*.

The first argument relates to the evaluation of plaintiff's symptomology, what we used to call credibility. The regulations provide for a two-step process, which Judge Ramos followed. 20 CFR Section 404.529 and SSR 16-3p spell out the process that an Administrative Law Judge must follow in evaluating such symptomology.

1         In this case the ALJ concluded that plaintiff does
2 suffer from medically determinable impairments that could
3 reasonably be expected to produce the alleged symptoms
4 claimed by plaintiff.  He went on to state, and we've cited
5 it, but it's at page 22, he summarizes stating that, "The
6 claimant's statements concerning the intensity, persistence,
7 and limiting effects of these symptoms are not entirely
8 consistent with the medical evidence and other evidence in
9 the record for the reasons explained in this decision."
10         I understand the arguments raised by Mr. Dolson on
11 behalf of his client, but in my view the Administrative Law
12 Judge did not strictly rely only on objective medical
13 evidence in arriving at his determination.  He very carefully
14 goes through the sequence of treatment of the plaintiff
15 following his stroke.  He mentions activities of daily living
16 which would undermine the claims raised by the plaintiff.  At
17 page 23 the claimant's activities were noted to be attending
18 to personal care, cleaning, doing laundry, shopping, driving,
19 and helping to care for his two children, indicating that
20 those clearly require a preserved ability to balance, stoop,
21 kneel, crouch and crawl.
22         The Administrative Law Judge also references
23 statements that plaintiff made to his various health care
24 providers.  SSR 16-3p makes it clear that the evidence that
25 can be considered can include statements made by the claimant

1  directly to medical sources. The plaintiff stated to Dr. Kim
2  in January of 2015, doing well at home, driving. That's at
3  443. He can manage independently, he is driving without
4  issue and cares for his children. That was stated to Dr. Kim
5  on March 20, 2015, at 448. He stated on November 25, 2014 to
6  Dr. Kim, doing well independently at home and driving, at
7  387. December 4, 2014 indicated no weakness and doing well.
8  To Dr. Lodi he stated he was doing very well and was almost
9  fluent. That's at 405. Dr. Masarech was told by plaintiff
10 he was doing well, he had only mild dysphasia, stroke and
11 shoulder. That's May 16, 2016, that's at 450.
12        The ALJ, in my view, properly considered the
13 activities of daily living, considered statements made by the
14 plaintiff and the findings of his physicians, the fact that
15 he appeared to recover well from his stroke, uses no
16 assistive ambulatory device, and although he has a slightly
17 modified gait, it does not appear to interfere with his
18 ability to perform work-related functions.
19        The ALJ relied somewhat on Dr. Jenouri's
20 consultative report from January of 2015, and I note that
21 that was only some six months after the stroke. Dr. Jenouri
22 did limit plaintiff to activities in the seated position, but
23 did not in his medical source statement indicate any
24 work-related limitations associated with his right side or
25 his speech impediment. And although he notes diagnoses in

1  both of those areas in his report of the examination, he
2  essentially notes that in terms of extremities and fine motor
3  activity of the hands, he found no muscle atrophy evident,
4  hand and finger dexterity intact, grip strength on the right
5  side was between four and five over five.  That's at 433.
6  　　　　So, in my view, the Administrative Law Judge
7  carefully considered all available evidence, objective
8  evidence and other evidence as contemplated in SSR 16-3p and
9  his determination is supported by substantial evidence.
10 *Meadors*, the case relied upon heavily by the plaintiff, is
11 distinguishable because in *Meadors* the Administrative Law
12 Judge omitted step one and the Court found that that was
13 error.
14 　　　　Again, you know, when we talk about reliance on
15 objective medical evidence, SSR 16-3p provides, "Medical
16 evidence is a useful indicator to help make reasonable
17 conclusions about the intensity and persistence of symptoms,
18 including the effects those symptoms may have on the ability
19 to perform work-related activities for an adult or to
20 function independently."  So objective evidence is certainly
21 worthy of consideration.  Of course, the Administrative Law
22 Judge in this case did not rely strictly on objective
23 evidence, but went beyond that as contemplated in that
24 ruling.  The other evidence, in my view, can include medical
25 sources.  That's clear from SSR 16-3p.

1       In my view, the ALJ explained his consideration of
2  the objective symptomology and the determination is supported
3  by substantial evidence.
4       Turning to the second argument, the regulations do,
5  I acknowledge, contemplate a function-by-function analysis.
6  However, under *Cichocki versus Astrue*, it is sufficient that
7  the RFC determination is explained in enough detail to permit
8  meaningful judicial review without the slavish going through
9  of each of the factors.  In this case plaintiff was deemed to
10 be capable of performing sedentary work, which under 20 CFR
11 Section 404.1567(a) and SSR 96-9p includes limitations on
12 lifting, sitting, and provides significantly for periods of
13 standing or walking for more than two hours in an eight-hour
14 workday.  So by definition those determinations were made
15 when sedentary work was specified.
16      Dr. Willer, I acknowledge his opinions are somewhat
17 curious in that he states that the plaintiff can walk for
18 four hours in an eight-hour workday, and that was credited by
19 the Administrative Law Judge at page 23, but he begs off on
20 determining the ability to stand.  Dr. Jenouri, of course,
21 limits plaintiff to sitting, but I think that the treatment
22 records of the various treatment providers, plaintiff's
23 statements about doing well, driving, his activities of daily
24 living, the fact he does not use an assistive device, and I
25 think that the fact that plaintiff can walk for four hours in

1  an eight-hour workday, I think the ALJ was within his right
2  to conclude also that that means that he can stand and/or
3  walk for two hours in a eight-hour workday.  So that I find
4  the step five determination is proper.
5       The mental limitations that were in the RFC, I
6  agree, do not erode the job base on which the grids are
7  predicated.  They do not affect plaintiff's ability to meet
8  the basic demands of competitive unskilled work.
9       I conclude that the RFC determination was proper,
10 and the step five determination at which the Commissioner
11 bears the burden was also proper.  So I will grant judgment
12 on the pleadings to the defendant and dismiss plaintiff's
13 complaint.
14       I thank you both for excellent arguments, this was
15 a fascinating case and you both made wonderful presentations.
16 Hope you have a good day.  Thank you.
17                 *          *          *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter